**Affirmed and Majority Opinion and Dissenting Opinion filed July 16, 2019.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-16-00880-CV

**TRANSAMERICA CORP, Appellant**

**V.**

**BRAES WOODS CONDO ASSOCIATION, INC., Appellee**

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2016-12580**

## M A J O R I T Y   O P I N I O N

Appellant, Transamerica Corp ("Transamerica"), appeals the trial court's orders granting Braes Woods Condo Association, Inc.'s ("Braes Woods") motion for summary judgment and motion to show authority. We affirm.

### BACKGROUND

Appellant/Plaintiff Transamerica filed suit against Defendant/Appellee Braes Woods. Transamerica pleaded that Yigal I. Bosch ("Bosch") (1) was its former

President, (2) owned at least three properties managed by Braes Woods, and (3) died intestate on January 29, 2015. The probate court appointed David Bash ("Bash") (son of Bosch) administrator of Bosch's estate. Bash allegedly learned Braes Woods rented out some of Transamerica's condos without its (the owner's) effective consent and had collected approximately $60,000 in rent from unauthorized tenants.

Transamerica sued Braes Woods in Harris County District Court. In its Original Petition, Transamerica alleged conversion of rental payments, fraud, injury to business reputation, "breach of duty good faith and fair dealing", and sought an accounting as well as both injunctive and declaratory relief. Attached thereto was an unsigned and unnotarized document purporting to be an "affidavit". In it, the "affiant" expressly alleged specific facts that would otherwise arguably tend to prove its entitlement to at least some relief.

Braes Woods countered that Transamerica owed it money for assessments and back rent; alleging non-payment, Braes Woods then initiated foreclosure on three condos. Transamerica sought to enjoin the foreclosure sales. At the April 2, 2016 hearing, the ancillary judge encouraged the parties to discuss the matter and identify alternatives; after doing so, the parties entered into an Agreement under Texas Rule of Civil Procedure 11. Braes Woods' counsel drafted the Rule 11 Agreement, which required (*inter alia*):

- Transamerica to timely pay the March and April assessments;

- Transamerica to timely pay the entire remaining balance (after offsets and credits) by April 1, 2016;

- Transamerica to post a $2,000 bond; and

- "$\pi$ – will produce any offsets or credits by March 16, 2016."

Transamerica's only compliance was the March payment. Braes Woods sold

2

the condos in May 2016. On June 28, 2016, Braes Woods filed a motion for summary judgment based on Transamerica's breach of the Rule 11 Agreement.

On August 22, 2016, the trial court held a hearing on Braes Woods' motion for summary judgment based on the alleged violation of the Rule 11 Agreement and granted the motion. The record contains (1) emails from Transamerica's counsel to Braes Woods' counsel repeatedly seeking records reflecting the credits and offsets (albeit without a specific due date)[1] and (2) responses (after the Rule 11 Agreement allegedly had been breached) affirming Braes Woods "had no issue" providing an accounting. The only discovery conducted by the parties was a single Request for Disclosure.

Following the grant of summary judgment, Braes Woods filed a verified plea to the jurisdiction and verified motion to show authority on September 8, 2016. In the plea to the jurisdiction, Braes Woods alleged Transamerica had forfeited its charter and therefore lacked standing to sue. In its consolidated response, Transamerica argued its corporate forfeiture meant (*inter alia*) the court's previous orders against it were void; it did not respond to Braes Woods' motion to show authority.

The court held a hearing on October 3, 2016, and pressed Transamerica's counsel as to why he did not respond to the motion to show authority; Transamerica's counsel insisted a response to said motion was unnecessary as Braes Woods had discovered and presented the (presumably and previously unknown) forfeiture of its charter. Transamerica insisted subject matter jurisdiction was lacking and therefore the trial court's previous orders were void. At the end of the

---

[1] Such a request is not a request for production; one email from Transamerica's counsel even specifically stated, "If you need for us to serve DISCOVERY to obtain this information [concerning credits and offsets], then we shall do so." (capitalization in the original).

hearing, the trial court granted Braes Woods' motion to show authority, declined to address subject matter jurisdiction, dismissed Transamerica's counsel, and orally struck Transamerica's pleadings (but did not include the language striking the pleadings or dismissing counsel in the final written order).

Transamerica filed a "Motion to Set Aside \ [sic] Reconsider Partial Summary Judgment; to Abate and\or for New Trial" in which it argued (*inter alia*) the matter was void in its entirety because the trial court lacked subject matter jurisdiction.

## ANALYSIS

Transamerica argues in its first issue that the trial court's orders granting Braes Woods' motion for summary judgment and motion to show authority are void because the trial court lacked subject matter jurisdiction. In that regard, Transamerica argues Braes Woods judicially admitted Transamerica lacked capacity to sue or be sued in this case because it forfeited its corporate charter; therefore, any orders signed by the trial court are allegedly void.

We begin by addressing Transamerica's challenge to the trial court's order granting Braes Woods' motion to show authority. Braes Woods filed a plea to the jurisdiction and a motion to show authority in which it challenged Transamerica's capacity to sue Braes Woods and asked the trial court to dismiss Transamerica's claims.[2] The trial court granted Braes Woods' motion to show authority (apparently agreeing Transamerica lacked capacity to sue Braes Woods) and dismissed Transamerica's claims.

As a general rule, corporations whose charters have been forfeited and not reinstated can neither sue nor defend themselves in Texas courts. Tex. Tax Code

---

[2] Braes Woods framed the issue in the trial court as one of standing, but the real issue presented (when reading the arguments in the pleading) is Transamerica's lack of *capacity* to sue.

Ann. § 171.252(1) (Vernon 2015); *see also Ross Amigos Oil Co. v. State*, 138 S.W.2d 798, 800 (Tex. 1940). *But see Vanscot Concrete Co. v. Bailey*, 853 S.W.2d 525, 526-527 (Tex. 1993) (reversing the court of appeals and holding corporations that have "ceased to exist" may appeal a trial court's decisions against it).

At the time it filed suit, Transamerica had forfeited its corporate charter due to nonpayment of taxes. Therefore, it lacked capacity to sue.[3] *See* Tex. Tax Code Ann. § 171.252(1); *Ross Amigos Oil Co.*, 138 S.W.2d at 800; *see also El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 250 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Stated simply, Transamerica lacked the "legal authority to act", particularly in Texas' courts. *See Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001); *see also Harris Cty. Emergency Servs. Dist. No. 2 v. Harris Cty. Appraisal Dist.*, 132 S.W.3d 456, 460 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) and *Adeleye v. Driscal*, 544 S.W.3d 467, 474 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Despite this incapacity, it nonetheless attempted to sue Braes Woods in a Texas court.

This lack of capacity (unlike standing) can be waived if it is not challenged in the trial court. *See Coastal Liquids Transp., L.P.*, 46 S.W.3d at 884; *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). Lack of capacity must be challenged by a verified pleading or it is waived. *Nootsie, Ltd.*, 925 S.W.2d at 662 (citing Tex. R. Civ. P. 93); *Bacon*, 921 S.W.2d at 250 (citing Tex. R. Civ. P. 93 and *Bluebonnet Farms, Inc. v. Gibraltar Sav. Ass'n*, 618 S.W.2d 81, 83-85 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)); *see also Kriegel v. Scott*, 439 S.W.2d 445, 446 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). Here, Braes Woods verified the facts contained in its plea to the jurisdiction.

---

[3] There is neither evidence nor argument Transamerica remedied this defect at any time.

Therefore, Braes Woods did not waive its challenge to Transamerica's lack of capacity and instead properly presented this dispositive issue to the trial court. No party has argued the presentment was untimely, Transamerica both urged the trial court to rule on this issue below and reiterated its argument here, and there is no evidence Transamerica's incapacity was ever corrected.

The parties seemingly agree that Transamerica lacked capacity to sue and the "legal authority to act" in Texas courts. *See Coastal Liquids Transp., L.P.*, 46 S.W.3d at 884; *see also Harris Cty. Emergency Servs. Dist. No. 2*, 132 S.W.3d at 460. The trial court agreed that Transamerica lacked capacity to sue Braes Woods and granted Braes Woods' motion to show authority. The trial court properly signed the order granting Braes Woods' motion, and the order is not void. Therefore, we reject Transamerica's argument that the order is void.

We next address Transamerica's contention that the trial court's order granting Braes Woods' motion for summary judgment on its counterclaim for breach of the Rule 11 Agreement is void because Transamerica lacked the capacity to enter into a contract and to sue or be sued. Transamerica could have entered into a valid contract "because the law does not expressly declare that contracts made by a corporation whose right to do business has been forfeited are void." *Ross Amigos Oil Co.*, 138 S.W.2d at 800.

Further, we are not persuaded by Transamerica's argument that the trial court's order granting summary judgment is void due to Transamerica's lack of capacity. The record shows Transamerica's lack of capacity was not brought up in the trial court until after summary judgment regarding the breach of the Rule 11 Agreement. A challenge to a party's capacity to bring suit must be raised by a verified pleading in the trial court to preserve the issue for review. *Tandan v. Affordable Power, L.P.*, 377 S.W.3d 889, 893 (Tex. App.—Houston [14th Dist.]

6

2012, no pet.) (citing Tex. R. Civ. P. 93(1), (2)). No argument regarding Transamerica's lack of capacity was made in the trial court prior to the grant of summary judgment concerning the breach of the Rule 11 Agreement. Failure to raise Transamerica's lack of capacity waived the issue for appeal. *See Nootsie*, 925 S.W.2d at 662. Therefore, the trial court's order granting summary judgment is not void.

Finally, Transamerica argues that, even if we conclude the summary judgment and the underlying Rule 11 Agreement are not void due to a lack of capacity, the trial court erroneously granted summary judgment because Braes Woods breached the Rule 11 Agreement when it refused "to cooperate so that the offsets and credits could be determined" and made Transamerica's performance under the Rule 11 Agreement "impossible." Transamerica also argues that "the award of purported deficiency and attorney fees" is "wrong as a matter of law" because (1) Braes Woods in its "writings explicitly states that there was an 'excess funds' [sic] post the wrongful foreclosure"; and (2) a review of the record shows the alleged deficiency is "not mathematical[ly] accurate."

Rule 11 agreements are contracts relating to litigation, and the Texas Supreme Court has construed them under the same rules as a contract. *Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.). We do not give a Rule 11 agreement greater effect than the parties intended. *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560-561 (Tex. 2018) (*citing Austin v. Austin*, 603 S.W.2d 204, 207 (Tex. 1980)). If a contract can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and we construe it as a matter of law. *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). To be effective, a Rule 11 agreement must consist of "a written memorandum which is complete within itself in every material detail, and

which contains all of the essential elements of the agreement." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)).

On the face of the Rule 11 Agreement, there is no evidence of Transamerica's claim that Braes Woods was required to complete performance of any kind, let alone to cooperate by issuing an accounting of offsets and credits. The Rule 11 Agreement contemplates that "π" (Plaintiff, here Transamerica) "will produce any offsets or credits by March 16, 2016". The language on the face of the Rule 11 Agreement is directly in conflict with Transamerica's argument herein. We presume that two attorneys engaged in litigation are sophisticated enough to understand the contract terms to which they are binding their clients when signing a Rule 11 Agreement. Furthermore, as a matter of law, the evidence presented to the trial court supports the damages award in the order granting summary judgment, and Transamerica did not (at the time of the hearing or thereafter) produce any proof of credits that may have offset that award. The trial court only granted summary judgment on Braes Woods' breach of the Rule 11 Agreement counterclaim and left Transamerica's additional claims intact so that it could potentially recover if it later gained proof of Braes Woods' alleged wrongdoing.

We overrule Transamerica's issues.

### CONCLUSION

We affirm the trial court's orders.


/s/ Meagan Hassan
   Justice


Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan (Frost, C.J., dissenting).

8